CASE 2.—ACTION BY UREY YOUNG AGAINST THE ILLI-
NOIS CENTRAL RY. CO. FOR DAMAGES FOR
PERSONAL INJURY.—Dec. 6.

# Illinois Central Ry. Co. v. Young

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

Judgment for plaintiff.  Defendant appeals.  Re-
versed.

1. Master and Servant—Injury to Servant—Absence of Negligence
—Risk of Servant—In an action by an employe of a railroad
company, who was injured by a piece of iron
striking him in the eye, while assisting a boiler maker in
chiseling a plug from the end of a flue therein, it being a
part of his duty to assist in such work, the evidence showing
that the work was being done in the usual way, and no
evidence indicating that the boiler maker was guilty of any
negligence in the performance of his work, the injury is one
which was liable to happen to one engaged in such employ-
ment and for which there can be no recovery.

2. Hazardous Business—Dangers Incident Thereto—Knowledge of
Servant—Assumed Risk—In contracting to engage in a
hazardous business the employe is presumed to have taken
into consideration the hazard or risk to which he must expose
himself in prosecuting the work, and an injury received in
the line of his employment, which is not due to the use of
defective tools or machinery, or the improper use of such
tools by his superior, but which was the direct result of a
danger incident to the nature of the business in which he
was engaged, there can be no recovery therefor.

WHEELER, HUGHES & BERRY for Appellant.

J. M. DICKINSON, TRABUE, DOOLAN & COX of Counsel.

Illinois Central Ry. Co. v. Young.

## POINTS AND AUTHORITIES CITED.

1. "The injury to appellee was the result of a danger incident to the nature of his employment, and against which the master did not contract, and the possible consequences of which the servant assumed."

2. "Pleadings and proof make no issue of gross negligence; it was error to instruct on gross negligence."

3. "Error to refuse to instruct on assumed risk." (Doyle v. Swift Iron & Steel Co., 5 Ky. L. R. 59; O. V. Ry. Co. v. McKinley, 17 Ky. L. R. 1028; O'Bannon v. L. & N. RR. Co., 9 Ky. L. R. 706; Ky. Freestone Co. v. McGee, 25 Ky. L. R. 2211; Gaffney v. Penna. Co. 8th Ky. L. R. 406.

HENDRICK, MILLER & MARBLE for Appellee.

## POINTS AND AUTHORITIES.

1. Appellee was entitled to a judgment on the pleadings because the general denial of negligence avails nothing as long as the answer fails to deny the facts alleged in the petition as constituting the negligence.

2. Appellee cannot complain of court's refusal to give a peremptory instruction in its favor where the evidence not only tended to support appellee's allegations of fact, but showed that every single fact alleged in the petition as constituting negligence was absolutely and literally true.

3. Under the general plea of negligence all degrees of negligence may be proved.

"Any degree of negligence however gross may be proved under a general averment of negligence." (Sherman & Redfield on Negligence, Vol. 1, Sec. 7, 4 ed.)

"This court has held, and such is the law, that under the general allegation of negligence in common law actions for injuries, you may establish the degree by proof and it is not necessary to allege this degree, whether gross or ordinary, in order to make a cause of action, the averment of negligence being sufficient." (L. & N. R. R. Co. v. Rains, 15 Ky. Law Rep. 423.)

4. But in the petition in this case the actual facts set forth show gross negligence if true, and in that case it would not

have been necessary to use the word "gross" in order to allege the degree of negligence.

And after all, if the petition had been in this respect defective, issue having been joined, proof heard, and the jury instructed that the negligence must be gross to warrant a verdict for plaintiff, the defect would have been cured by the verdict, if such defect had existed. (City of Louisville v. Snow's Adm'r., 21 Ky. Law Rep., 1268; City of Covington v. Diehl, 22 Ky. Law Rep., 995; Mass. Benefit Ass'n v. Richart, 99 Ky. Law Rep., 302.)

And pleadings will be liberally construed for the purpose of sustaining a verdict. (Murray v. Booker, 27 Ky. L. R. 781. See also Harlow v. Supreme Lodge, &c., 23 Ky. L. R., 456; C. & N. R. R. Co. v. Venable, 23 K. L. R., 427.)

4. The abstract principle that a servant assumes the risks necessarily incident to his occupation is not here denied, but the Court has so often held that it is proper to refuse to submit abstract principles by instruction to a jury, we decline to quote authorities. The instructions given by the Court clearly and concisely submitted the issue to the jury and upon the whole, excepting the peremptory instruction offered and refused, were as favorable to the appellant, or more so, than those offered by its attorneys, and submitted the real questions involved very clearly to the jury.

The identical instructions as to assumed risk which appellants offered were expressly condemned by this court in the case of Pfisterer v. Peter & Co., 25 Ky. Law Rep., 1605.

OPINION OF THE COURT BY JUDGE LASSING—
Reversing.

Urey Young brought suit in the McCracken circuit court for $2,000 damages for the loss of an eye, caused by the alleged negligence of the Illinios Central Railroad Company while he was engaged at work as a boiler maker's helper in its shops at Paducah, Ky. The company's answer was a traverse and a plea of contributory negligence. Issue was joined, and, upon trial, a verdict was rendered against the company for $2,000, and it appeals.

The evidence is not conflicting, and the whole question of the company's liability rests upon the

fact as to whether or not the injury to appellee was the result of a danger incident to the nature of his employment, and against which the company did not contract. If it was, the company is not liable; if it was not, then the company is liable. Appellee was a man 25 years old, and had been engaged in the company's employ for perhaps six weeks, and under the particular foreman with whom he was working when injured for about three weeks. Upon the day that he was injured he was engaged as helper to a boiler maker named Knapp, in the repair of a boiler. They had been at work in the forenoon cleaning the flues, and upon returning to work after dinner they at once went to work inside the boiler, Knapp leading the way. Appellee was told to hold his light so that Knapp could see, and, as he raised it above Knapp's head, Knapp struck a chisel with a hammer for the purpose of cutting out a plug or key which they were trying to remove from the end of the flue, and a sliver or piece of iron struck appellee in the eye, destroying the sight thereof. Appellee testifies that he had, during his employment at appellant's shop, been engaged in the repair of boilers; that he was familiar with the method used in removing the "plugs," and that they had theretofore used chisels for that purpose, but that they had been driven by means of air, and not with a hammer; that when he got into the boiler the boiler maker, Knapp, struck before he (Young) knew that he was going to strike; and that, at the time, he was standing to the right of and about two feet away from Knapp. This was the testimony as to how the injury occurred, as detailed by appellee.

A part of the duty of appellee as helper to the boiler maker was to assist in removing the plugs or keys which held the tubes in place. These plugs or

keys were wedge shaped, and could generally be removed by tapping on the sides thereof with a hammer. In thus attempting to remove them they were sometimes broken, and when so broken they could usually be driven out by the use of a rod driven against them from the opposite end; and when both of these methods for their removal failed, they had to be chiseled out. On the day in question, the plug had been broken off, and, as they had, in the forenoon, been unable to drive it out by means of a rod, their purpose in going into the boiler in the afternoon was to chisel it out. Appellee says that they had used air chisels, which are the same as was used when appellee was injured, except that the air chisel is driven or propelled by air pressure instead of by hand power. Clearly, it is immaterial what kind of motive power is used, as the chisel must in any event be driven with sufficient power to cut the plug or key out of the flue. Appellee must have known the purpose for which they entered the boiler. He held the light so that Knapp could see how to cut away the plug or key. He was standing by his side, not two feet away. He must have been looking in the direction of the point where Knapp was using the chisel, and could not have avoided seeing what he·was doing. From the very nature of the work, some employment is more dangerous than others, and those who accept employments which, from their very nature, are more or less hazardous and dangerous, do so at their own risk—or, as has been often and aptly said by this court, they assume the risk incident to the nature of their employment. Ohio Valley Ry. Co. v. McKinley, 33 S. W., 186, 17 Ky. Law Rep., 1028; O'Bannon v. L. & N. R. Co., 6 S. W., 434, 9 Ky. Law Rep., 706; Ky. Freestone Co. v. McGee, 88 S. W., 1113, 25 Ky. Law Rep., 2211; Gaffney v. Pennsylvania

Co., 1 S. W., 677, 8 Ky. Law Rep., 416. "The servant is presumed to have contracted with reference to all of the hazards and risks ordinarily incident to the employment; consequently, he cannot recover for injuries resulting to him therefrom." Wood on Master and Servant, page 672. It is the duty of the employer to exercise reasonable care to prevent accidents, to provide his employes with tools and machinery suitable for the work in which they are engaged, and to keep the same in reasonably safe condition and repair. He is not called upon nor required to use the latest and most improved patterns of machinery, and is not liable for injury which might have been avoided by the use of such machinery. He is bound only to the extent that such tools and machinery as he does employ are reasonably safe and suitable for the work to be done. In the case at bar the tools used by the servant Knapp were of the simplest character, and appellee must have known, and did know, that, when the iron plugs are cut away by the chisel, the particles of iron will fly in different directions, dependent upon the angle at which the chisel is held. In thus cutting away or removing the iron plugs from the hole, it was absolutely necessary that the one using the chisel should be stationed close to the plug—within a few feet of it. Knapp was so stationed, and his helper, appellee, was stationed right beside him, and not over two feet away. The very nature of the business in which they were engaged required that he should be there, and appellee had to hold the light above Knapp's head, in order that he might see how to hold and adjust the chisel so as to cut to advantage. The business in which they were engaged was hazardous, but not more so to the helper than to Knapp, the boiler maker, and the position or place in which appellee was required

to stand was not more hazardous than could be avoided. He had to stand near by Knapp, in order to render the assistance needed to enable him to see to do the work in which they were engaged, and which they had been employed to do.

If there was any negligence at all in this case, it was in the failure of the boiler maker, Knapp, to call the attention of his helper to the fact that he was about to strike a blow upon the chisel—or, in other words, was about to begin work. Knapp could not see how to do the work until the light was so held as to enable him to adjust the chisel to advantage. He told appellee to hold the light above his (Knapp's) head, and, as he did so, Knapp commenced chiseling away the plug. It is not charged that he stationed appellee in a place more dangerous than was necessary, or that he struck the blow with the hammer in any other than the usual, proper, and needed way to make the chisel cut. If notice was required before the first blow was struck by the hammer, it might with equal propriety be required before each subsequent blow was struck, for there was the same danger accompanying each subsequent blow of the hammer, if the work progressed, as it could only progress as the particles of iron were cut out of the plug. We do not believe that such is the rule, or that Knapp was required or called upon to notify appellee before he struck with the hammer. Appellee's duty as helper required him to be where he was. He was bound to know that, where iron is chiseled off, the particles fly from the chisel. The business was of such a nature that there was at all times some slight danger of being hit in the face or eye by the flying particles. In order to properly discharge his duty as helper, he had to see where he was holding the light —had to use his eyes as well as his hands, just as

his superior; the boiler maker, had to do. Knapp was proceeding in the only way he could proceed to cut the plug out of the flue. Appellee knew this. The boiler was not in the shop, but out in the yard, hence they could not use the compressed-air power, and had to resort to the hand hammer. But there is no proof whatever that it was used in any other than a proper manner, or that appellee was placed in a position more hazardous than the character and nature of the business required. The injury was not one against which Knapp, or the appellant company could provide, or which they could foresee, but it was one which was liable to happen to any one engaged in that business or undertaking. Few businesses are conducted in which there is not some danger or liability of injury, but it will not do to say that, whenever injury results, the master or employer is liable. The better rule is that where the employer provides the employe with tools and machinery reasonably safe to do the work in which he is engaged, and keeps them in reasonably safe condition, and provides a reasonably safe place to work, that he has done his duty toward the employe, and the latter, when thus equipped, assumes the risks incident to the business. The application of any other rule would be most unjust, and would make the employer the insurer against injury to his employes. It would relieve the employe of all responsibility and care for his own safety and protection from injury. In contracting to engage in a hazardous business, the employe has the right and is presumed to have taken into consideration the hazard or risk to which he must expose himself in prosecuting the work, and to have provided therefor by exacting and receiving more pay than he would, or could, receive for the performance of labor less hazardous. This the law

presumes, for no one of ordinary intelligence would engage in a hazardous undertaking for the same pay that he would in a business in which there was little or no risk or hazard. Appellee was a man of mature years. He had had experience in the business in which he was engaged. He was injured while in the discharge of a duty within the lines of his employment. The injury was not due to the use of defective tools or machinery, or to the improper use of the tools with which his superior was working, but was the direct result of a danger incident to the nature of the business in which he was engaged, and, being such, he cannot recover.

The trial court should have sustained appellant's motion for a peremptory instruction, and for this reason the judgment is reversed and case remanded, with directions for further proceedings consistent with this opinion.