[No. 7601.  *En Banc.*  November 5, 1909.]

ALOF NORDSTROM, *Appellant*, v. SPOKANE & INLAND EMPIRE
RAILROAD COMPANY, *Respondent*.[1]

MASTER AND SERVANT—ASSUMPTION OF RISKS—OBVIOUS DANGERS—
KNOWLEDGE OF CONSEQUENCE. A lineman of ordinary intelligence and
six years' experience, who had previously worked in iron or steel
mills, assumes the risk from sawing iron lugs from insulators sup-
porting a trolley wire, whereby iron dust was thrown into his eye,
that being a common happening during six days' work in sawing
lugs; and, with knowledge of such danger, he cannot plead ignorance
of the fact that the consequence might be the loss of his eye.

SAME—SAFE PLACE—ANTICIPATION OF DANGER—ASSUMPTION OF
RISKS. Where a lineman, sawing iron lugs from insulators support-
ing a trolley wire, was injured by iron dust thrown into his eye, the
master is not liable for failing to supply a safe place in which to
work in that the tower car was not high enough to bring the line-
man's eyes above the lugs and out of danger from flying iron dust,
where it appears that, owing to the unevenness of the track, the line-
man on the tower would sometimes be above and sometimes below
the lugs, and the plaintiff worked six days and made no complaint,
although dust in the eyes was a common occurrence and the danger
was as well known to the servant as to the master; since, in such
a case, the servant assumes the risks of obvious dangers respecting
the safety of the place, and the master is not liable if the danger is
so unlikely to happen that it would not be anticipated by the ordi-
narily prudent man, whether master or servant.

RUDKIN, C. J., FULLERTON, GOSE, and DUNBAR, JJ., dissent.

Appeal from a judgment of the superior court for Spo-
kane county, Kennan, J., entered January 24, 1908, upon
sustaining a challenge to the sufficiency of the evidence, dis-
missing an action for personal injuries, after a trial be-
fore the court and a jury.  Affirmed.

*Robertson & Rosenhaupt*, for appellant.
*Graves Kizer & Graves*, for respondent.

MORRIS, J.—The respondent was constructing an electric
railway from Spokane to Waverly, and the appellant was in

[1]Reported in 104 Pac. 809.

its employ as a lineman. It having been discovered that the insulators used in the holding of the trolley wire were defective, in that the lugs were too large, the linemen were instructed to saw them off. In doing this work the linemen worked in pairs, standing upon the tower cars and using a hack saw, one man sawing the lug on the right, and the other sawing the lug on the left of the insulator. In order to hurry the work along, the men worked overtime, for which they were correspondingly paid; and when it became too dark to see otherwise, they were in the habit of using a lantern, hanging it upon the trolley arm in such a way as to cause its light to shine on the lug. The men had been engaged in this work about five days, and they seemed to have had more or less trouble with the steel dust released in the sawing flying in their eyes, causing them annoyance, discomfort, and ofttimes pain. Whenever the dust would fly into the eye of one of the men, he would remove it himself, or obtain the assistance of his fellow workmen, or, if not then successful in obtaining relief, a trip would be taken to Spokane, and the services of an oculist obtained. The fact of the saw filings or dust getting into the eyes of the men was frequently discussed among them at their boarding house, where they often assisted one another in its removal from the eye. The plaintiff was twenty-six years old and had been employed as a lineman for about six years. Previous to that he had worked in roller mills and sawmills for about two years, and seems, so far as we can gather from the record, to have been a man of ordinary intelligence and knowledge of human affairs.

On October 24, at about six in the evening, while, with his fellow lineman McCoy, he was sawing a lug, some of the particles of steel released in the sawing flew, or were blown, into his right eye. He and McCoy endeavored to remove them, but being unsuccessful and plaintiff suffering pain, on the following day a trip was taken to Spokane and an oculist consulted. Plaintiff was under treatment until December 15,

when the right eye was removed, the oculist being unable to reduce the inflammation and save the eye. Thereafter this action was commenced, resulting in the sustaining of a challenge to the sufficiency of the evidence and consequent dismissal. Error being alleged in the ruling of the court below in sustaining this challenge, the case is brought here on appeal. The complaint avers the negligence of the defendant in, (1) directing the plaintiff to work in a dangerous place, without notice or instruction as to the danger; (2) in failing to furnish a proper tower car so as to raise the eyes of the lineman above the insulator; (3) permitting plaintiff's co-employee to saw on the insulator opposite him and throw dust into his eyes; and (4) in failing to supply plaintiff with glasses or goggles.

The case is somewhat novel in the history of the manner in which the injury was inflicted; but, although the industry of counsel and our own research have failed to find a parallel case, we think it yields as readily to the well-known and recognized rules of law applicable to the relation of the master and servant as if it were a matter of common occurrence. When the relation of the master and servant is sustained, the law implies and fixes upon each certain duties and responsibilities, which are reciprocal in their nature. These duties, in so far as they relate to the case before us, are that the master shall furnish the servant with a reasonably safe place in which to work, and shall take the precaution of an ordinarily prudent man in keeping the place reasonably safe. He shall furnish the servant with proper tools and appliances that are reasonably safe for the use required of them, and use ordinary care in so keeping them. He shall, in case of any latent or hidden danger known to him and unknown to the servant, apprise the servant of the existence of such danger and the possibilities of consequent injury, and he shall employ such only as have sufficient intelligence to comprehend the danger, if any, of the situation. Having thus acted, he has fulfilled his full duty to his servant, and the

servant in his turn takes upon himself the obligation of using such care and precaution for his own safety as an ordinarily prudent man would use under like circumstances, and assumes the risk of injury from obvious and apparent dangers; and the same force of reasoning which holds the servant to assume the risk of only obvious and apparent dangers, releases the master from liability from dangerous conditions or situations of which he has no knowledge, or of which he could not acquire knowledge in the exercise of ordinary diligence on his part.

Labatt states the rule thus:

"A person is not . . . answerable at law for a failure to avert or avoid peril that could not have been foreseen by one in like circumstances, and in the exercise of such care as would be characteristic of a prudent person so situated. In other words, it is not negligence to fail to provide against an accident of such a nature that nobody could have foreseen it, and that no prudence could have anticipated the need of guarding against it." 1 Labatt, Master & Servant, §142.

The rule has been recognized in this court, and is thus succinctly stated in *Daffron v. Majestic Laundry Co.*, 41 Wash. 65, 82 Pac. 1089:

"Where an employer places a guard sufficient to protect against all dangers reasonably to be anticipated, he is not guilty of negligence because the guard fails to protect against an unforeseen danger . . ."

The proximate cause of appellant's injury was the iron dust, released by his own saw or that of his fellow lineman McCoy, either being blown into his eye by the wind or propelled and thrown by the movement of the saw. It appears that this was a common happening. The linemen frequently assisted each other in removing this dust from their eyes; they talked about it while not at work; they apparently all knew about it and realized the probability of its occurrence. It was then, in so far as it was a danger, an open, apparent, and obvious one. It was a danger naturally incident to the work being done. It was one of the usual and ordinary

risks of such employment, and, as such, fell within the character of risks assumed by the servant. It will not do for the servant to say that, while he knew the flying dust would enter his eye, he assumed it would only cause momentary discomfort or pain, or at the most necessitate a visit to an oculist. There is a plea of knowledge of the danger, but not of its consequences, a doctrine which the law does not recognize. A man might as well say he knew, if his hand came in contact with a moving saw, it would cause him pain and injury, but he did not realize it might cause the loss of his hand. Knowledge of danger is in law knowledge of the injurious results naturally and proximately flowing from that danger.

Appellant is a man of ordinary intelligence, of some experience in sawmills, iron or steel roller mills, and six years as a lineman working upon telephone, telegraph, and other electric current wires. It must be a matter of common knowledge to such a man that sawing iron lugs would create iron dust; that this iron dust would fly with the wind, or be thrown or forced by the movement of the saw; that flying dust would enter the eye if sufficiently near; that iron dust entering the eyes might result in an injury the nature and extent of which, from the well-known delicate structure of the eye, no man could foresee. We, therefore, believe this case falls within the rule of assumed risks, and hence the appellant cannot recover.

Considering the case now upon the contention of appellant that the place was not reasonably safe: This could only be on the theory of some hidden, latent, or lurking danger, known to the master and not known to the servant, which it was the master's duty to warn his servant against, a most admirable rule when properly applied. This cannot be predicated upon the fact that the tower car was not a proper car. It is true, owing to the unevenness of the track, the roadbed not being completed, the car would be at different heights, so that the eye would sometimes be above, sometimes on the level with, and sometimes below the lug; but this

was well known to the appellant. There was no complaint made to the respondent. The men evidently anticipated nothing from this, other than the inconvenience from working at the different levels. Or, if it could be said to be a defect, it was as well if not better known to the appellant than to the respondent. It was respondent's first venture in work of this character. It had no knowledge of the defects, if any, except as appellant and his fellow workmen might have made complaint. No complaints, however, seem to have been made in this regard. If it be said that it was respondent's duty to know that the tower car was too low, or too high, whatever the defect might be, its duty in this regard, if a duty, could only have been to inform appellant of that which was already well known to him. Continuing to use the defective car, with full knowledge of the defects, making no complaints, relying upon no promise to remedy or repair, he again falls within the rule of assumed risk.

An analogous case upon this contention of appellant is that of *Detroit Crude Oil Co. v. Grable*, 94 Fed. 73. The facts in that case, so far as necessary to illustrate the point of law involved, were these: Standing close to an engine, the flywheel of which was held in place by bolts with protruding heads, was a water pipe. The vibration of the engine caused a similar movement of the water pipe, this condition being known to the engineer. The protruding bolts on the flywheel struck the water pipe, breaking it, and the engineer was injured by pieces of the broken pipe. The theory of recovery was that, while the engineer knew that the protruding bolts were dangerous, he did not anticipate or know that they might break the water pipe, and thus injure him. The court, in dealing with this situation, expressed itself as follows:

"The contention by which it is sought to sustain the judgment of the court below is that the servant did not anticipate being hurt in the way he was. It is said that the danger of this character of accident was not anticipated, and the risk of it not, therefore, assumed. . . . The duties of the servant brought him in daily contact with the machinery, and fur-

nished him a constant opportunity to inspect the same.  His means of knowledge were evidently superior to those of the master.  Notwithstanding that the defect was open, patent, and constant, and the servant's means of knowledge not only equal, but superior, to those of the master, defendant in error is forced into the dilemma of maintaining that the danger of such a defect was one which the master was bound to antici-pate, while the servant was not.  This contention is evidently unsound, as will be recognized upon its simple statement, without more. . . Under such circumstances, if the servant is not bound to anticipate and appreciate the danger, no grounds can be suggested on which the master is required to do so. . . When the defect is known, and the danger appar-ent, it is immaterial that the servant does not anticipate the precise extent or character of the injury which may result. None of the authorities upon the subject put the rule of assumption of risk upon the narrow distinction that the serv-ant may know of the danger, but not fully realize the extent or character of the injury which may be sustained.  The attempt to introduce such a test case or condition would ren-der the rule of assumption of risk by the servant practically nugatory.  That there is no such impracticable element in the rule must be regarded as settled."

To the same effect is the case of *Bollington v. Louisville & N. R. Co.*, 125 Ky. 186, 100 S. W. 850, where the complaint was that the servant was directed to mix lime and water, without being instructed or warned of the danger of explo-sion, which the servant did not know and which the master did know, the court using this language:

"The use of water and lime in making whitewash, and the effect of water on lime when applied to it, are of such general character and so universally accepted, and are of such com-monplace and every day transactions, that any person. . . . who had ordinary intelligence and capacity would and ought to know and understand the effect of mixing lime with water, and take notice of this common and universal natural law."

Of like import is *Roessler & H. Chemical Co. v. Peterson*, 134 Fed. 789:

"It cannot be seriously contended that any special duty of protection is owing by the employer to a laborer of

mature years and intelligence, who assumes, upon request, the work of slacking lime for the purpose of whitewashing. The employer in this case, is not to be complained against for assuming that such a man understands, as well as the employer, all that is necessary to be understood about the work he undertakes."

In *San Antonio Gas Co. v. Robertson*, 93 Tex. 503, 56 S. W. 323, the servant lost an eye while spreading heated tar upon a boiler higher than his head, some of the tar splashing into his eye. He had never performed such a labor before, and was *ignorant of the danger of such an occurrence.* The court says:

"The case does not come within the principle, so often declared, that the master engaged in a dangerous business must not expose an inexperienced servant to the hazards of it, without warning of their existence. . . No authority has been found, and we think no sound one can exist, in which the duty to warn and instruct the servant arises where no unusual or extraordinary danger is to be encountered. . . That a serious injury was inflicted does not prove that the work was more than ordinarily dangerous; for there is scarcely a business or situation in which one may not, without negligence in any quarter, receive a serious injury to so delicate an organ as the eye. Such injuries do not, however, generally happen from ordinary risks; and, hence, where only ordinary risks are to be incurred, they are not to be anticipated and provided against."

See, also, *Illinois Cent. R. Co. v. Young*, 124 Ky. 8, 97 S. W. 1115.

A well-considered case, citing many authorities in its support, is that of *Hysell v. Swift & Co.*, 78 Mo. App. 39, where a boy was set to work brushing off a rail along which the carcasses of the animals were propelled. The dust on the rail contained poisonous bacteria, some of which lodged in the boy's eye and destroyed it. It was contended it was the duty of the master to know the probability of such an injury and to warn the servant against it, or to furnish him protection against its happening. It was not shown that, in all

the clearing of the rail before, any bacteria had found lodgment and worked injury to any one. The court held that the injury could not reasonably have been anticipated, and would not have happened except under exceptional circumstances, and that in such cases it is not necessary to take precautionary measures to prevent an injury, although, if taken, the injury could not have happened; citing Ray, Negligence of Imposed Duties, 133, that: "A reasonable man does not consult his imagination, but can be guided only by a reasonable estimate of probabilities"; and Webb's Pollock on Torts, 45, where that author says:

"A reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all."

A like rule is laid down in *American Brewing Assn. v. Talbot*, 141 Mo. 674, 42 S. W. 679, 64 Am. St. 538, where. it was sought to fix the charge of negligence on the defendant in not anticipating the sinking or settling of a warehouse, caused by an unusual rise in the Mississippi, it being held, where an injury cannot reasonably be anticipated, and would not have happened except under exceptional circumstances, it is not negligence to fail to take precautionary measures to prevent it.

Mr. Justice Peckham recognizes the same rule, in *Hubbell v. Yonkers*, 104 N. Y. 434, 10 N. E. 858, 58 Am. Rep. 522, in holding, where the accident is one of that character whose occurrence is rare, unexpected, and unforeseen, to hold it to be negligence in failing to provide against it, is to hold to a most extensive liability, and to cause defendants in cases of this character to become substantially insurers against any accident which human care, skill, or foresight could prevent. Chief Justice Cooley gives his support to the doctrine, in *Sjogren v. Hall*, 53 Mich. 274, 18 N. W. 812,

in saying that where the person injured had the same means as the employer of understanding the danger, or the accident was such as no one would have been likely to foresee, there could be no recovery. In both the last-cited cases many illustrations are given of the effect and prevalence of the doctrine. Other cases directly in point are: *Nelson v. Chicago, M. & St. P. R. Co.*, 30 Minn. 74, 14 N. W. 360; *Lane v. Town of Hancock*, 142 N. Y. 510, 37 N. E. 473; *Beltz v. Yonkers*, 148 N. Y. 67, 42 N. E. 401. So that, as was said in *Hysell v. Swift & Co., supra*, whether judged by the accepted rule requiring the master to provide a reasonably safe place for his servant to work, and reasonably safe tools and appliances with which to work, and guard him; or whether, conceding the proper application of such rule in the great variety of uncommon cases, where it has been held to be the duty of the master to become informed on those matters of scientific knowledge possessed by men of general education and information relative to the danger and hazard of the business in which he is engaged, and that he should give information of such danger to his uninformed servant, and provide him with reasonably safe appliances for his protection; it likewise follows that, when injury is unlikely to follow lack of information, when it cannot reasonably be expected to follow, when the chance of injury on account of lack of information is remote and could not reasonably have been anticipated, and would not happen unless in exceptional circumstances, then a failure to provide against resulting injuries is not negligence.

It, therefore, follows, if our reasoning be correct and the authorities we have cited are sound in principle; that whether the injury in this case was from an apparent danger which was one of the attendant risks of the employment, or whether it was so unusual in its character, so unlikely to happen, so unexpected in ordinary conditions, that the ordinarily prudent man, whether master or servant, could not foresee it, nor anticipate it, and thus guard against it, the re-

sult is the same; negligence cannot be attributed to the respondent.

Believing, therefore, the court below was justified in his ruling, the judgment is affirmed.

MOUNT, CROW, PARKER, and CHADWICK, JJ., concur.

RUDKIN, C. J., FULLERTON, GOSE, and DUNBAR, JJ., dissent.