[No. 4908.   Decided April 4, 1904.]

THOMAS CURRANS, *Respondent*, v. SEATTLE & SAN FRANCISCO RAILWAY & NAVIGATION COMPANY, *Appellant*.[1]

APPEAL—PARTIES—ASSIGNEE OF JUDGMENT—SERVICE OF NOTICE UPON, NOT NECESSARY.   The assignee of a judgment is not a party in interest, upon whom notice of appeal must be served, and an appeal will not be dismissed for failure to make such service, but upon request the assignee will be substituted as party respondent.

MASTER AND SERVANT—NEGLIGENCE—COAL MINE IN POSSESSION OF DEVELOPMENT COMPANY—CONTROL BY OWNER.   In an action against a coal company for personal injuries sustained by a miner, a challenge to the sufficiency of the evidence, on the theory that the mine was not in the possession of the company at the time of the accident, but in the possession of a construction company, which had been doing development work, is properly overruled, where in addition to the coal company's ownership other circumstances appear connecting it in a responsible way with the control and operation of the mine.

SAME—INJURY TO MINER BY DELAYED BLAST—USE OF DEFECTIVE FUSE—EVIDENCE OF NEGLIGENCE—SUFFICIENCY—QUESTION FOR JURY.   In an action for injuries sustained by a delayed blast, it is a question for the jury whether defendant was guilty of negligence in supplying the workmen with double-tape fuse for use in blasting in a coal mine, where it appears that triple tape fuse is firmer, less liable to miss fire or to hold the fire in delay, and is more often used in coal mines and in damp places than the double-tape, which was considered not safe in such places, and where the blast was delayed some forty-five minutes, which was longer than usual.

SAME—CONTRIBUTORY NEGLIGENCE—ASSUMPTION OF RISKS—EXPERIENCED MINER INJURED IN INVESTIGATING DELAYED BLAST.   In such a case, the question of the contributory negligence and assumed risk by an experienced miner injured while investigating the cause of a delayed blast is for the jury, where he had been working but a short time in the mine, was unfamiliar with double-

[1]Reported in 76 Pac. 87.

tape fuse and did not know that it was unsafe or more likely to
hold fire or delay the blast than triple-tape fuse, although he was
a miner of twenty-three years' experience, and had heard that
fuses held fire for hours, and when it was a rule for an ex-
plosion to occur or for the fire to be extinguished before the
lapse of time for which he waited for it, and he testifies that
in mines where he had worked fuses were not used; since he
does not assume an increased hazard out of the ordinary which
he did not appreciate, and contributory negligence is a defense,
the burden of establishing which is upon the defendant.

Appeal from a judgment of the superior court for King
county, Griffin, J., entered April 3, 1903, upon the verdict
of a jury for $25,000, for injuries sustained by a coal
miner by a delayed blast. Affirmed.

*Root, Palmer & Brown,* for appellant.

*John Larrabee, W. L. Waters,* and *Ballinger, Ronald &
Battle,* for respondent.

HADLEY, J.—This is an action to recover damages for
personal injuries received from the explosion of a blast in
a coal mine. The suit was brought against the Seattle
& San Francisco Railway & Navigation Company and the
Green River Construction Company. At the trial a non-
suit without prejudice was granted as to the latter com-
pany, but was denied as to the former. The cause was
then submitted to a jury, and a verdict was returned
against the said Seattle & San Francisco Railway & Navi-
gation Company in the sum of $25,000. A motion for
a new trial was denied, and judgment was entered in ac-
cordance with the verdict. The said judgment-defend-
ant has appealed.

Respondent moves to dismiss the appeal for the reason
that no notice of appeal was served upon the assignee of
the judgment. The judgment was filed April 3, 1903, and

was, on the 10th day of the same month, duly assigned to
the Northwestern Improvement Company. The assign-
ment was filed in the clerk's office April 13, 1903, in ac-
cordance with § 5133a, Bal. Code, and, under the terms
of said section, the record became notice of the assignment
from the time of filing. The notice of appeal was not
served until June 27, 1903, which was more than two
months after the assignment of judgment was recorded.
It is therefore contended that, since the assignee of the
judgment is the real party in interest, the notice of appeal
should have been served upon it. Appellant says it had
no actual notice of the assignment, but the declaration of
the statute—that the filing of the assignment shall be
notice—probably answers that argument. However, we
think, under our procedure, that an appellant is not re-
quired to serve notice of appeal upon the assignee of the
judgment from which he appeals. No specific statutory
provision to that effect has been pointed out to us. Sec-
tion 6503, Bal. Code, provides that notice shall be served
upon "the prevailing party or his attorney;" and § 6504
provides that it shall be served "upon all parties who
have appeared in the action or proceeding." The assignee
of the judgment cannot be said to belong to either class,
since he is an entire stranger to the case in every way
until after the judgment is entered. The case is finally
closed by the judgment, and any interest which the as-
signee may acquire therein arises from subsequent history.
It is therefore unnecessary to serve him with notice of ap-
peal. He is, however, as the successor in interest, a proper
party to be substituted as respondent; and, since each party
here requests such substitution in the event the motion to
dismiss the appeal is denied, it is therefore now ordered
that the motion to dismiss the appeal be denied, and that

said Northwestern Improvement Company be, and it is, hereby substituted as party respondent herein.

Appellant assigns as error that the court denied the challenge to the sufficiency of the evidence, and also denied the motion for judgment. The challenge and motion were interposed at the close of plaintiff's case, and also when all the evidence had been introduced. Involved in this assignment of error is the claim that there is no evidence showing that respondent was in the employ of appellant at the time he was injured. Appellant was the owner of the mine property, but its co-defendant, Green River Construction Company, for a time was engaged in certain development work in and about the mine. It is urged by appellant that the evidence shows that said construction company was in sole charge when respondent was injured. Whatever may be our view as to whether the evidence tends to show that the construction company may have been interested in the operation of the mine at that time, it will be remembered that the court granted a nonsuit as to said company, and that action of the trial court has not been brought here for review in this appeal. The question here is, was appellant a wrongdoer in the premises, and was there sufficient evidence tending to connect appellant with the control and operation of the mine to warrant its submission to the jury. We think there was. We do not deem it necessary to review in detail the testimony upon that subject. It is sufficient to say that, in addition to the fact of ownership by appellant, a number of circumstances, given in evidence, were such that we think it would have been error for the court to have decided, as a matter of law, that appellant was not in a responsible way connected with the control and operation of the mine at the time of the accident. The same may be said in refer-

ence to appellant's further claim that respondent was in the employ of an independent contractor not connected with either of the defendant corporations. Those were questions, under the evidence, to be submitted to the jury for their determination.

The next contention under the above assignment of error is that no negligence on the part of appellant was shown. The evidence shows that respondent and another went into the mine about 7 A. M. They began drilling holes for a couple of blasts, and so continued until near noon, when the holes were ready for the charges. They placed the blasts, each lighted the fuse connecting with his own blast, and then both hurried out of the mine to await the explosions. Four or five minutes after reaching the surface they heard one explosion. They waited and listened for the other, but it did not occur. Meantime they ate lunch, and, after the lapse of about three-fourths of an hour, they returned to the mine to investigate. An investigation disclosed that it was the blast which was placed and lighted by respondent that had failed to explode. Respondent proceeded to the location of the fuse, and was just bending over to examine it when the blast exploded. Respondent's eyes were destroyed, his hands broken, and he was otherwise injured in a permanent way. He charges negligence on the part of appellant in furnishing a fuse which, he alleges, was defective.

The evidence shows that two kinds of fuse are manufactured; one is called "double-tape" fuse, and the other "triple-tape" fuse. One essential difference between the two is that the double-tape fuse lacks one outside wrapper that belongs to the triple-tape. The additional wrapper is a greater protection against moisture, and makes the triple-tape article safer where dampness is encountered.

Another difference is found in the fact that, with the absence of the additional wrapper on double-tape fuse, it is not as firm as the triple-tape, and in the process of tamping some small piece of rock or coal may be tamped against it, and produce a dent or kink that may break the progress of the fire when it is ignited. Triple-tape fuse contains about fifteen per cent more powder meal than is found in double-tape. This powder meal is placed along the fuse, and through it runs a powder yarn that is steeped in saltpeter. This powder yarn is intended to act as a carrying fuse itself, and to carry the train of fire along in the powder meal, the latter being the powder used in the fuse. In passing through the machine, in the process of manufacture, the continuous train of powder may be broken so that a space may be left where there is no powder, but the powder yarn running through the center is supposed to supply the deficiency, and carry the fire along. If by chance an indenture should break the yarn at such a point, so as to form a disconnection, then the fire might go out entirely in the dampness; but, if the fuse happened to be in a dry place the heat might be sufficient to set the inside lining on fire, and it might continue along until it struck the yarn again. The above indicates some of the points of difference between the two kinds of fuse, and the results that may follow from their use. The fuse furnished to respondent, and which was used by him, was of the double-tape kind.

Before the motion for nonsuit was made, at the close of the plaintiff's case, there was considerable testimony to the effect that the double-tape fuse is not a proper or safe one to use in a coal mine. This view was also much strengthened by the testimony of George B. Adair, a witness afterwards introduced by the appellant. This wit-

ness appears to have had extensive experience in dealing with explosive materials. The testimony shows that he is the most extensive dealer therein for this northwest coast country, and that he sold the fuse that was used in this instance. He testified concerning the nature of the two kinds of fuse substantially as heretofore detailed. He testified that each grade is standard of its kind, and proper to be used for the purposes intended; that the fuse used in this instance was of recent manufacture, and as good an article of that grade as is manufactured anywhere in the world. His testimony was, however, to the effect that the double-tape grade is intended for use in dry places, and not in coal mines, and that from ninety to ninety-five per cent of the fuse which he sells for use in coal mines is of the triple-tape kind.

There was much evidence to the effect that, for the reasons heretofore stated, the use of the triple-tape fuse will much more certainly insure a discharge of the explosive, and also that the discharge will quickly follow the ignition of the fuse; that the fire is more apt to slowly make its way along the trail of the double-tape, and, if it is not extinguished entirely, may finally effect a discharge after much delay, and at an unexpected moment. One witness testified that, with the use of the triple-tape, a failure to discharge will not occur more than once in one hundred times, and that, in such a case, the fire will be extinguished and there will be no discharge at all after considerable delay.

There was also some testimony that appellant's foreman had, prior to this accident, been informed by workmen who complained to him that the kind of fuse used was defective for the purpose, and that he had said that he would investigate the matter, or words to that effect.

Appellant says there was no evidence that the delayed explosion was the result of using defective fuse.   It need not be argued that the explosion was due to the fact that fire reached the charge at that moment.   Fire had been placed in the fuse connected with the charge some forty-five minutes before.   The explosion was therefore delayed and, from the testimony as to the results of the applied use of the different kinds of fuse, it was to be determined whether the delay was due to the fact that this particular fuse was used.   With such testimony as is above outlined, we think it would have been error for the court to have decided, as a matter of law, that no negligence was shown. That was a question for the jury. It was for them to say whether negligence was shown, under all the testimony as to the character of the fuse used, as to the kinds manufactured, and as to what is customarily used for coal mining purposes.   Such was true at the close of the plaintiff's case, and the testimony relating to that subject was emphasized before the evidence was finally closed.

Another question involved in the challenge to the evidence is, perhaps, the most serious and difficult one in the case.   Appellant contends that, under the evidence, the court should have held, as a matter of law, that respondent assumed the risk, and that the cause for that reason should have been taken from the jury and dismissed.   It is urged that, although it is the duty of the master to provide a safe place for the servant to work, and to exercise reasonable care to furnish for his use materials which are not defective, yet, if a new danger arises during the progress of the work which is known to the servant and is not known to the master, it at once becomes the duty of the servant to inform the master of such new danger, and it then becomes the latter's duty to investigate and remove

it; that, if the servant fails to so inform the master and voluntarily goes into the presence of the danger, he thereby assumes the risk, and if injured he cannot recover.

The above stated legal proposition is undoubtedly correct, but the difficulty as to its application arises when we undertake to apply it to the facts of the given case. It is urged, that the respondent in the case at bar knew, and that appellant did not know, of the existence of this unexploded blast; that respondent knew that the fuse had been fired, and that the blast was liable to explode; that with such knowledge, he voluntarily went into the presence of the danger, and should be held to have assumed the risk.

Respondent testified that, although a miner of twenty-three years' experience, yet he did not know of the defective character of this fuse. He had been working at this mine but a short time, and was engaged on his eleventh shift when injured. He said he had not been accustomed to the use of either kind of fuse hereinbefore described, but that what he called "squibs" had been used in mines where he had worked. He stated that he did not know of the danger of smouldering fire and delayed discharges from the fuse furnished by appellant. He admitted he had heard miners say that fuses had been known to carry fire for hours, and then cause explosions, but said he had never known such a thing to occur in his experience. Appellant therefore urges that respondent's own admission shows that he had heard of such danger, and also that, as a miner accustomed to the use of explosives, he should have known that danger was probable, and should have guarded against it accordingly.

Notwithstanding any lack of knowledge or experience on respondent's part in the premises, he should doubtless

be held to the same accountability as other persons in
like surroundings assuming to discharge the class of work
which he had undertaken.   It is well known that the use
of explosive materials is hazardous, and those using them
must assume the danger that is merely and ordinarily in-
cidental.   But when conditions exist which are out of
the ordinary, and when, by means thereof, one has been
brought into the presence of an increased hazard, and
of a danger not usual or ordinarily expected, we think the
test as to whether he has assumed the risk must depend
upon whether he has acted as an ordinarily prudent per-
son would have done under similar circumstances.   Per-
haps no two accidents ever happened in exactly the same
manner, and under the same circumstances; but the condi-
tions are often very similar.   Each case must depend upon
its own facts and surroundings, but it is the intention of
the law to apply the above stated general rule to the vary-
ing circumstances.   Whether one has acted with the care
of an ordinarily prudent person, under given surround-
ings, is a question of fact in each case.   In a given case,
the facts tending to show want of ordinary care may be
such as to leave no room, in the minds of reasonable
men, for difference of opinion.   In such a case, the court
should determine, as a matter of law, that recovery can-
not be had.   But in all other cases the fact becomes one
for the jury to determine, and it is therefore ordinarily
for the jury.

"It is well settled that where there is uncertainty as
to the existence of either negligence or contributory negli-
gence, the question is not one of law but of fact and to be
settled by a jury, and this whether the uncertainty arises
from a conflict in the testimony or because the facts being
undisputed fair-minded men will honestly draw different

conclusions from them." *Richmond etc. Co. v. Powers,*
149 U. S. 43, 45, 13 Sup. Ct. 748, 37 L. Ed. 642.

See, also, *Washington etc. Co. v. McDade,* 135 U. S. 554,
10 Sup. Ct. 1044, 34 L. Ed. 235.

If respondent assumed the risk, then he was guilty of
negligence which contributed to his injury, the latter be-
ing included in the former.    In this state contributory
negligence is an affirmative defense, and the burden is
upon the defendant to establish it.    *Spurrier v. Front St.
Cable R. Co.,* 3 Wash. 659, 29 Pac. 346.    It is, there-
fore, in rare cases only that the subject of contributory
negligence should be withdrawn from the jury.    *McQuil-
lan v. Seattle,* 10 Wash. 464, 38 Pac. 1119, 45 Am. St.
799.    See, also, collection of Washington cases, under the
title of the last named case, in Remington's Notes on
Wash. Rep. p. 218.

We therefore think the questions of contributory negli-
gence and assumed risk were for the jury in this case.
Evidence was before the jury as to the nature of the fuse
used, as to the probability, from experience, of quick or
delayed explosions, and as to the probable extinguish-
ment of the fire after the lapse of time.    It appeared from
the evidence that it is the rule for an explosion to occur,
or for the fire to be extinguished, before the lapse of as
long a time as forty-five minutes.    It is the exceptional
condition when one or the other of these things does not
occur within that space of time.    It was therefore for
the jury to say whether, under all the circumstances and
under common experience in the use of fuse and blasts,
as shown by the evidence, the respondent waited as long
as an ordinarily prudent person under like surroundings
would have done before going back into the mine.    If he
exercised that degree of care, then we think he cannot be

said to have assumed the risk. He had the right to assume that the danger was passed after the lapse of such time as common experience, under similar circumstances, had taught was sufficient to remove the causes for danger.

Appellant seems to have proceeded at the trial upon the theory that the question of assumption of the risk in the case was purely one for the court. No instruction was therefore asked or given, directly calling the jury's attention to this feature of a reasonable or sufficient lapse of time between the firing of the fuse and the return to the mine, as a fact upon which they should pass. Such an instruction, if requested, would doubtless have been given. We think, however, that the question was submitted to the jury by general instructions given, and that they must have passed upon that feature of the case. The court instructed that the degree of care which one is required to use, in order that he shall not be guilty of contributory negligence, is that same degree of care which the ordinarily careful and prudent person exercises under like circumstances to protect himself from danger. The jury were also instructed that, if one is injured by reason of certain negligence on the part of his employer, but, if he himself has been guilty of some act or omission which has contributed proximately and directly to the cause of his injury, he cannot recover. These instructions comprehended the feature of contributory negligence in returning to the mine too soon, and the jury must have passed upon that question in favor of respondent.

For all the foregoing reasons, we think, the court did not err in denying both the challenge to the evidence, and the motion for judgment, either at the time when first made, or when renewed at the close of the evidence. Other errors are assigned upon the introduction of testimony,

and also concerning two instructions. We think the court correctly instructed the jury, and we do not find that prejudicial error was committed in connection with the introduction of testimony. We deem it unnecessary to prolong the discussion by taking up those matters in detail. The verdict in this case is large, but no complaint is made in this court that it is excessive. We shall therefore not consider that matter.

The judgment is affirmed.

DUNBAR and MOUNT, JJ., concur.