[No. 9159. Department One. December 2, 1910.]

WILLIAM E. PROPS, *Respondent,* v. WASHINGTON PULLEY AND MANUFACTURING COMPANY, *Appellant.*[1]

MASTER AND SERVANT—ASSUMPTION OF RISKS—OBVIOUS DANGERS —NATURAL LAWS. A boiler maker of mature years and varied experience, who had done some firing, assumes the risks from a back fire or explosion in a furnace of a boiler which he was firing with sawdust and shavings for fuel, whereby a banked door was blown off, although he testified that he had never seen or heard of such an explosion; since it was due to simple, natural laws of which he was bound to take notice (FULLERTON, J., dissenting).

Appeal from a judgment of the superior court for King county, Ronald, J., entered May 3, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a boiler maker in a boiler explosion. Reversed.

[1]Reported in 111 Pac. 888.

*Graves & Murphy* (*M. M. Richardson*, of counsel), for appellant.

*R. D. Hill* and *Milo A. Root*, for respondent.

GOSE, J.—The plaintiff, thirty-seven years of age, a boiler maker and a worker in structural iron and steel, was injured by a back fire or an explosion in the furnace of the boiler of the defendant's plant, on October 14, 1909. The day preceding the injury, he was engaged to take the place of the regular night watchman at the defendant's mill for a short time. The defendant was operating a plant for the manufacture of window sash, doors, etc. The plaintiff's duties were to watch the mill, and to have steam sufficient to operate the plant at the opening hour each morning. He had had about six years' experience as a boiler smith in the American naval service. During this time he had charge of the boilers. While engaged in that service, he fired at different times, when the regular fireman was ill, covering a period of about two weeks altogether. He had also fired about four months at another time, using coal as fuel in each instance. He had never used sawdust and shavings for fuel. On the night of the injury, he was firing with sawdust and shavings taken from the mill. The defendant had provided slabwood to be used with the sawdust and shavings. The negligence charged is that the plaintiff had never used such fuel, that the defendant knew that explosions were liable to occur from its use, and that it failed to warn him of the danger. There was a verdict and judgment for the plaintiff. The defendant has appealed.

In addition to the facts stated, the respondent testified that he had never seen or heard of such an explosion, and that he had no knowledge that a stove would blow out. The respondent banked the fire, closed the furnace door, and a few minutes later there was an explosion in the fire box, and the door was thrown open and fire and shavings thrown upon him. He testified that he had not changed the dampers to the furnace, but that he left them as the engineer had placed them. The engi-

neer who employed him knew that there had been back fires in the furnace, but did not instruct or warn him. The former explosions had been trivial, and had not injured any one. The respondent had lived for many years within a short distance of the appellant's plant, and had been a frequent visitor at the furnace room, in both the daytime and the nighttime.

The appellant insists, that the danger which caused the respondent's injury was not a hidden or latent one, but an obvious one springing from simple, natural, and universal laws, of which respondent was bound to take notice; that there was no duty upon the appellant to warn him of such laws; and that he assumed the risk incident to the employment. This view we think must be upheld. The rule as to the duty of the master to warn the servant is aptly stated in 1 Dressler's Employers' Liability, § 98, as follows:

"In the absence of anything to show the contrary, the latter has a right to assume that the servant knows those facts of common experience with which ordinary persons of his age and experience are familiar—such matters as are within common observation, and are according to natural law. He has also the right to assume that his servant will exercise reasonable care, under the circumstances, to inform and protect himself."

See, also, 1 Labatt, Master & Servant, § 241; 26 Cyc. 1168; *Wharton v. Tacoma Fir Door Co.*, 58 Wash. 124, 107 Pac. 1057. The contention that upon the facts stated the respondent assumed the risk, is supported by the following cases. *Nordstrom v. Spokane & Inland Empire R. Co.*, 55 Wash. 521, 104 Pac. 809, 25 L. R. A. (N. S.) 364; *Roessler etc. Chemical Co. v. Peterson*, 134 Fed. 789; *Bollington v. Louisville & N. R. Co.*, 30 Ky. Law 1260, 100 S. W. 850; *San Antonio Gas Co. v. Robertson*, 93 Tex. 503, 56 S. W. 323; *Johanson v. Webster Mfg. Co.*, 139 Wis. 181, 120 N. W. 832; *Fuller v. New York etc. R. Co.*, 175 Mass. 424, 56 N. E. 574.

In the *Nordstrom* case, the plaintiff, twenty-six years of age, was engaged in sawing steel lugs. While so occupied,

some of the particles of steel released in the process of sawing got into his eye. He was under treatment for some time, when it became necessary for his eye to be removed. It appeared that, before he received the injury, steel filings had been blown into the eyes of some of his fellow workmen, resulting in inflammation but not in the loss of an eye. In reaching the conclusion that the plaintiff assumed the risk, we said:

"It must be a matter of common knowledge to such a man that sawing iron lugs would create iron dust; that this iron dust would fly with the wind, or be thrown or forced by the movement of the saw; that flying dust would enter the eye if sufficiently near; that iron dust entering the eye might result in an injury the nature and extent of which, from the well-known delicate structure of the eye, no man could foresee."

In the *Roessler* case, the plaintiff, a man forty years of age and of varied experience, was injured by the explosion of lime while slacking it in the process of making whitewash. It was contended on the part of the plaintiff, that it was the duty of the master to instruct him as to the dangers attending the work. In holding that the court should have given a peremptory instruction for the defendant, it was said:

"We cannot, in the light of the evidence, regard whitewashing, and the slacking of lime as incident thereto, as outside the scope of the general employment of such a laborer as the plaintiff is proved to have been. He must, therefore, be considered to have assumed the risk incident to his employment. Whitewashing, and the slacking of lime for that purpose, is one of the commonest of domestic services. No special skill or training, and the slightest experience only, are required to perform it. That heat and steam are evolved in the slacking of lime, is almost as much a matter of common knowledge as that boiling water will produce steam, and it cannot be seriously contended that any special duty of protection is owing by the employer to a laborer of mature years and intelligence, who assumes, upon request, the work of slacking lime for the purpose of whitewashing. The employer, in this case, is not to be complained against for assuming that such

a man understands, as well as the employer, all that is necessary to be understood about the work he undertakes."

In the *Bollington* case a judgment was affirmed sustaining a demurrer to a complaint which alleged that the plaintiff, a boy nineteen years of age, was injured by an explosion while mixing lime and water, and that he did not know and had not been warned that it would explode. The court said that the explosion produced by the mixture of water and lime was but the result of a common and universal natural law, generally known, of which the plaintiff was required to take notice. In the *Robertson* case, the plaintiff, while painting a hot boiler with coal tar which he had been instructed to and had heated for the purpose, was injured by the popping of the tar. The court said:

"Such risk as there was is of the same nature as that which every cook using stoves and cooking utensils in connection with water or grease incurs. It was not greater than the farm-hand incurs in handling the simple tools with which he performs his labor."

In the *Johanson* case, an injury was sustained by the ignition of benzine which had been spilt upon the floor and about which the plaintiff was in the habit of working. She professed ignorance as to the inflammability of benzine. The court said:

"In case of an adult of apparent usual intelligence, the employer may assume that she has the knowledge common to the great mass of mankind unless informed to the contrary, and in such case is not negligent in failing to specially instruct or warn."

The appellant was a man of mature years, of varied experience and a skilled boiler maker. His experience around boilers had been extensive. He cannot profess ignorance of simple, natural laws. Whether the occurrence be called an explosion, a back fire, or a blow out, it could have occurred only by smothering the fire with the fuel and closing the drafts. In this way the gas was accumulated in the

furnace, and when the pressure became strong enough, it would escape along the lines of least resistance. It is not claimed that there was any defect in the furnace itself. The respondent had used coal in firing. He knew that fine particles of coal would lie closer than coarse coal; that shavings or sawdust would lie closer than slabs or larger wood, and that gas, like steam, must be afforded some means of escape.

The respondent, among other cases from this court, cites *Currans v. Seattle & S. F. R. & Nav. Co.*, 34 Wash. 512, 76 Pac. 87; *Baker v. Duwamish Mill Co.*, 43 Wash. 149, 86 Pac. 167, and *Jancko v. West Coast Mfg. & Lum. Co.*, 34 Wash. 556, 76 Pac. 78. In the *Currans* case, the plaintiff was injured by the delayed explosion of a fuse in a coal mine. The negligence charged was that the company had used a double tape fuse when it should have used a triple tape fuse. After the lapse of about three-fourths of an hour, the fuse which plaintiff had lighted having failed to explode, he proceeded to examine it, and while bending over it, it exploded. It appeared from the evidence that explosions usually occurred in less than forty-five minutes. Upon these facts it was held to be a question for the jury whether he was guilty of contributory negligence. The case is readily distinguishable from the case at bar. It could not be said, as a matter of law, that he was guilty of negligence in approaching the fuse, when he had reason to believe that the fire had become extinguished. At least, reasonable minds might well differ as to whether his conduct was that of the ordinarily prudent man. In the *Baker* case, it was held to be the duty of the master to warn the servant of the existence of a hole in the floor of a mill where he was working which was unknown to him and which was concealed from view by the presence of sawdust. In the *Jancko* case, the plaintiff received an injury to his hand by the vibrations of the saw in a shingle mill. He testified that he did not know that the saw would vibrate. He told the foreman before he began working that he had never worked in a shingle mill. It was held that it was for

the jury to determine whether the warning given as to dangers surrounding him were sufficient. None of these cases, in our opinion, support the respondent's contention.

The judgment is reversed, with directions to dismiss the case.

RUDKIN, C. J., MOUNT, and PARKER, JJ., concur.

FULLERTON, J. (dissenting)—Under the facts shown, I think the question whether the respondent assumed the risk of injury from the explosive was for the jury. I therefore dissent from the judgment directed by the majority.