[No. 9436.    Department One.    June 12, 1911.]

RALPH O'DELL, by O. B. O'Dell, his Guardian etc., Appellant,
v. NORTHERN COAST TIMBER COMPANY et al.,
Respondents.[1]

MASTER AND SERVANT—ASSUMPTION OF RISKS—DUTY TO WARN— OBVIOUS DANGERS. An experienced logger, 21 years of age, is not entitled to recover for injuries sustained by reason of failure to warn him of the dangers to which he was exposed, and which were so obvious and apparent as to preclude a recovery, where it appears that he was directed to signal a railway train to stop until a cable across the track could be removed, that he stationed himself on a log and on the opposite side of and near the cable when the train was three or four hundred yards away approaching at 35 miles an hour, and remained there until the engine was only two lengths away, and then ran back and was struck by the cable, when he had ample time to place himself in a safe place, there being abundant safe places from which the signal could be given.

DUNBAR, C. J., dissents.

[1]Reported in 115 Pac. 1085.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered December 28, 1910, upon the verdict of a jury rendered in favor of the defendants by direction of the court, dismissing an action for personal injuries sustained by an employee in a logging camp. Affirmed.

*Stevenson & Sorley*, for appellant.

*Hayden & Langhorne*, for respondents.

MOUNT, J.—Plaintiff brought this action to recover for personal injuries. At the close of the evidence offered on behalf of the plaintiff, the trial court directed a verdict in favor of the defendants. Plaintiff has appealed from a judgment of dismissal.

It appears that the defendant, Northern Coast Timber Company, operated a logging camp near the town of Mineral, in this state. The Tacoma Eastern railroad passed through the place where the logging operations were being conducted. The logging company was required to drag logs over this railroad track. In order to do so, two donkey engines were used. One of these engines was stationed about two hundred feet on the easterly side of the railroad, and the other about the same distance on the westerly side thereof. One of these engines was used in dragging logs from the woods, and the other engine would then take the logs and drag them across the railroad track. In order to do this work, it was necessary to have a wire cable, about five-eighths of an inch in diameter, across the railroad track. Logs had been placed against the ends of the ties of the railroad track on each side thereof, a little higher than the rails, so that the logs being dragged over the railroad would not injure the rails of the railroad track. The wire cable lay across these logs and, when it was not in use, it would sag down somewhat. Sometimes it would rest upon the tops of the rails.

Plaintiff was employed by the Northern Coast Timber Company on March 15, 1910, as a rigging slinger. It was

his duty as such rigging slinger to assist in moving and setting the donkey engines. He continued this work until the 29th day of March, 1910, when he was set to work as a chaser. His duty as chaser required him to follow the logs as they were drawn across the railroad track from one donkey engine to the other. In case a train approached upon the railroad, it was his duty to go to the railway and flag the train to stop, so that the cable could be removed until the train passed by. On the 29th day of March, while the plaintiff and the foreman of the Northern Coast Timber Company were working about one hundred feet from the railway track, they heard a train approaching from the north. The foreman told the plaintiff to "run out to the track and flag the train." Plaintiff ran down to the track along the way logs had been dragged, and stationed himself upon the logs over which the cable extended across the railway, and about nine feet south of the cable. He saw the train coming about three or four hundred yards away. He signaled with his hands for the train to stop, but it did not do so. When the train had approached within about two car-lengths from him, going, he says, at the rate of about thirty-five miles an hour, the foreman called to him, "Let her go." Plaintiff says he then stepped back from the track and, as he did so, the train caught the wire cable, which struck him and broke his left leg about the ankle. Plaintiff, at the time of his injury, was between twenty and twenty-one years of age, and was experienced in logging operations, but had no previous experience where a cable lay across a railroad track. The trial court was of the opinion that the danger was obvious, and that the plaintiff assumed the risk and contributed to his injury when he placed himself on the opposite side of the cable in front of the swiftly moving train, and therefore directed a verdict for the defendants.

Appellant argues that the danger was not apparent, and that it was the duty of the foreman to warn the plaintiff of the danger of standing on the side of the cable opposite the

approaching train.   While the foreman of the respondent
timber company directed the plaintiff to "run out to the
track and flag the train," it is not claimed that the plaintiff
was directed to go to any particular place.   A very natural
thing for him to have done would have been to stand in the
middle of the track between the rails, and from that point
signal the train to stop.   It is obvious that in such position
he would require no warning from the master to get out of
the way of the train when he saw it would not stop.   When
the plaintiff arrived at the railway track, the approaching
train was three or four hundred yards away.   He had abun-
dant time to place himself in a safe place, and the foreman no
doubt assumed that he would do so.   The plaintiff testified
that, when he arrived at the track, the cable sagged down from
the logs which it crossed, and rested on the top of the rails.
He stood upon the log over which the cable lay and from "six
to nine" feet south of the cable, with the train approaching.
He signaled with his hands for the train to stop, but got no
answer.   He remained there until the train was about two
car-lengths away, and when he saw there was no intention to
stop, instead of stepping over the cable to the side to which
the train was approaching, as he might readily have done, he
stepped back from the track.   There appears to have been no
necessity for him to stand near the cable as the train passed.
Safe places were abundant from which the signal might have
been given, and we think the foreman was not required to tell
him where to take his station in reference to the cable, when
it must have been apparent to one of plaintiff's age and ex-
perience that there was certainly some danger in standing so
near the cable when there was no necessity therefor.   When
the danger is not a latent or hidden one, but is obvious,
there is no duty to warn.   *Props v. Washington Pulley &
Mfg. Co.*, 61 Wash. 8, 111 Pac. 888; see, also, *Hage v.
Luedinghaus*, 60 Wash. 680, 111 Pac. 1041.

We therefore think the trial court properly granted the

motion for a directed verdict, and the judgment must be affirmed.

PARKER and GOSE, JJ., concur.

DUNBAR, C. J., dissents.