[No. 10620. Department Two. January 22, 1913.]

HELEN BENSON *et al.*, *Appellants*, v. ENGLISH LUMBER COMPANY, *Respondent*.[1]

DEATH—ACTIONS FOR WRONGFUL DEATH—CONSOLIDATION—STATUTES—CONSTRUCTION. Rem. & Bal. Code, § 183, giving the heirs or personal representatives of one killed a right of action for wrongful death, authorizes but one suit, to be prosecuted in a single proceeding; hence separate actions by different heirs are properly consolidated.

MASTER AND SERVANT—INJURIES—EVIDENCE—QUESTION FOR JURY. The question of the negligence of a logging company is for the jury, where it appears that, in hauling in a heavy log which struck a mound of earth, a steel hook broke, striking and killing a servant, and that the hook was made of an inferior grade of steel and had a defect known as a "cold shut," which could be easily detected by the blacksmith making it, and which made the hook much more liable to break than one properly made of high grade steel.

SAME—SAFE APPLIANCES—FELLOW SERVANTS. No question of fellow servants arises, where the jury could find a violation of the master's primary duty to furnish a reasonably safe appliance.

SAME—SAFE APPLIANCES—ASSUMPTION OF RISKS—RELIANCE ON ASSURANCE. The servant does not assume the risk of danger from the master's furnishing an appliance with inherent defects of which the servant had no knowledge, and which a superior servant assured him was all right.

[1]Reported in 129 Pac. 403.

SAME—CONTRIBUTORY NEGLIGENCE OF SERVANT—PROXIMATE CAUSE —EVIDENCE—QUESTION FOR JURY. Contributory negligence being an affirmative defense, with the burden of proof upon the defendant, and the question being for the jury where the testimony raises an uncertainty upon which reasonably fair-minded men will differ, the court cannot say that a man employed in logging as a "chaser" was guilty of contributory negligence, as a matter of law, in standing where he was struck when a defective hook broke; since the proximate cause of the injury was for the jury, even if contributory negligence was a remote cause or a mere condition of it; and the court could not speculate as to the existence of any fact necessary to establish contributory negligence.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered October 21, 1911, upon granting a nonsuit, dismissing an action for wrongful death. Reversed.

*Buck, Benson & McLane,* for appellants.

*Ballinger, Battle, Hulbert & Shorts,* for respondent.

ELLIS, J.—The plaintiffs, aged respectively five and seven years, children of Ole Benson, deceased, brought separate actions by their guardian *ad litem* to recover for the wrongful death of their father through the alleged negligence of the defendant. Upon motion of the defendant, the two actions were consolidated. The consolidated action came on for trial, and when the plaintiffs had closed their evidence, the defendant challenged its sufficiency by a motion for nonsuit, upon the grounds, that the plaintiffs had failed to prove any negligence of the defendant as charged; that the evidence showed that the deceased was guilty of contributory negligence and had assumed the risk; and that, if any negligence was shown, it was that of a fellow servant. The challenge was sustained, and the action was dismissed. The plaintiffs have appealed.

The material evidence may be condensed as follows: The respondent was engaged in the logging business, and conducted it in the ordinary way. The logs were dragged out of the woods upon the ground by a donkey engine placed

at the landing. This was done. by means of a wire cable extending from the engine, through certain blocks and pulleys, back into the woods, where the cable was fastened to the logs by means of a "choker." The crew engaged in this work consisted of several men, among them a "hook tender," a "rigging slinger," and a "chaser." All of the crew were under the control and supervision of the hook tender, who acted as foreman. As such he had charge of and superintended the work. He had immediate charge of the logs until they had been hauled out of the woods into the clearing about the landing, when the chaser took charge of them and directed their progress the rest of the way to the landing. The deceased was acting in the capacity of chaser.

At the time of the accident, a log had been hauled out of the woods by means of the cable, blocks, pulleys and swivel, under the direction and supervision of the hook tender, a distance of between 400 and 500 feet, to a point about 150 feet from the landing. One witness said the log was large and heavy; another that it was not very large nor unusual in any way. At or near that point, a part of this more complicated adjustment of the cable, referred to in evidence as the swivel, broke. The hook tender came out of the woods, and it was determined to drag the log the rest of the way by means of a stub line operated by a direct pull, without the intervention of blocks or pulleys. The hook tender himself superintended and, with the assistance of the rigging slinger, adjusted this line, attaching it to the choker about the end of the log by means of a steel hook. The deceased was present at the time and, one of the witnesses stated, assisted in the work. The hook tender testified that, when this operation was completed, he told the deceased that "everything was all right, to go ahead with the log." He also said that he told the deceased and the other man "to step back out of the way." The hook tender himself went back of the log, and the rigging slinger and the deceased went to a position ten or twelve feet to one side and slightly

forward of the log. The hook tender testified that, in case a hook broke, the piece might fly in any direction, back of the log as well as to the side, and that no one could tell which way it would fly. At that instant the engine was started with an even, steady pull, swinging the log around in line with the cable, when the log, becoming somewhat embedded in a small mound of earth, ceased to move and the hook broke, the cable recoiling toward the engine, and the detached piece of hook flying in the direction of the deceased. Something—no witness testified what—struck the deceased in the forehead, crushing it and causing his death. It seems probable that it was the fragment of hook, as the piece was found at his side immediately after he fell.

No one could say who gave the signal to start the engine, but it seems to be admitted that it was the chaser's duty at this stage of the work either to give the signal himself or to notify the signalman to give it. All of the evidence as to the actual accident was given by the hook tender and the rigging slinger, who seem to have been the only near eye-witnesses. They both testified that it was no uncommon thing for the hooks or other parts of the rigging to break in pulling a heavy log, and that the men knew that something was liable to break. The hook tender also testified that the deceased was inclined to be careless about getting out of the way, and had often been warned to be more careful. The hook tender, immediately after the accident, found the piece of broken hook at the side of the deceased, and tossed it away; seeing which, another witness picked it up, and positively identified it when it was produced at the trial. Two blacksmiths, of long experience in working with steel and in the making of hooks and other appliances for logging and other purposes, were qualified as experts, and on examination of this piece of hook, testified that it was made of a low grade of tool steel, and that the break showed a defect in the making, known as "cold shut," caused by bending the steel at too low a temperature. They both testified that a

hook made of low grade steel, such as this, was much more brittle and likely to snap, and will stand much less strain, than one made of a high grade of steel, and has a less close grain and looks differently when broken. Both testified that a cold shut, such as shown on this fragment, greatly weakened the hook, and that any blacksmith in making a hook could detect at once whether there was a cold shut in it.

As a preliminary contention, the appellants claim that the court erred in consolidating the two actions. The actions were brought under Rem. & Bal. Code, § 183, giving a right of action for wrongful death. We have construed this section as granting but one cause of action, to be prosecuted in a single proceeding by the heirs or personal representatives of the deceased. *Koloff v. Chicago, Milwaukee & P. S. R. Co., ante* p. 543, 129 Pac. 398; *Riggs v. Northern Pac. R. Co.,* 60 Wash. 292, 111 Pac. 162; *Archibald v. Lincoln County,* 50 Wash. 55, 96 Pac. 831; *Copeland v. Seattle,* 33 Wash. 415, 74 Pac. 582, 65 L. R. A. 333. The court committed no error in ordering the consolidation.

Was the nonsuit properly granted? The respondent contends that no negligence or violation of its duty to the deceased was established. The duty of the master to exercise reasonable care to furnish the servant with a reasonably safe place of work and reasonably safe appliances so that the servant may not be exposed to unnecessary hazards, is positive and nondelegable. This has been so often held by this court as to require no citation of sustaining authority. That the jury might reasonably have found that the hook furnished by the master was not reasonably fit for its intended purpose, either because of the inferiority of the steel of which it was fashioned or because of the weakening effect of the cold shut, both of which defects could easily have been discovered in the making, and the latter at least by subsequent inspection, seems under the evidence too plain for argument. Respondent suggests that, with so heavy a log partially embedded in earth, any hook would be likely to

break. Sufficient inherent causes for the breaking having been shown, the jury would not be required to speculate, nor are we, as to what added strain a sound hook made of good material might have sustained.

The contention that the negligence, if any, was that of a fellow servant is equally untenable. There being evidence from which the jury might have found a violation of the primary duty to furnish a reasonably safe hook, no question of fellow service was involved. *Koloff v. Chicago, Milwaukee & P. S. R. Co.*, supra; *Hicks v. Jenkins*, 68 Wash. 401, 123 Pac. 526; *Hall v. Northwest Lumber Co.*, 61 Wash. 351, 112 Pac. 369. The question of the respondent's negligence was for the jury.

Since there was evidence from which the jury might have found that the hook broke because of inherent defects, the deceased did not assume the risk of that danger unless he knew of the defects. There is no evidence that he ever saw the hook, and the evidence that he had anything to do with the adjustment of the stub line was meager. As their titles would indicate, the hook tender and rigging slinger would be expected to perform that duty, and the evidence shows that they were mainly instrumental in performing it in this instance. We are not impressed by the hook tender's statement that, when he came out of the woods, he at once came under the chaser's orders. This was a mere conclusion, and his own actions at the time negative its soundness. He personally assisted in and superintended the adjustment of the stub line, assured the other men that it was all right, and told the deceased to go ahead with the log. There was no act or circumstance from which a relinquishment of his command can be inferred. The duty of inspection was upon the master. The assurance of the hook tender that the tackle was all right was the assurance of the master upon which the deceased had the right to rely.

"On the other hand, the servant does not accept the risks of unknown, latent, unseen, or obscure defects or dangers,

such as the servant would not discover by the exercise of
ordinary care and prudence, having reference to his situa-
tion, but such as the master ought to discover by exercising
the duty of inspection which the law puts upon him to the
end of seeing that the premises, tools, and appliances with
respect to which the servant is required to labor are in a
reasonably safe condition; since the servant is not, in gen-
eral,—except where he has agreed to do so by contract with
his master,—required to institute *special inspections* for the
purpose of discovering hidden dangers." Thompson, Negli-
gence (2d ed.), 664, § 4641.

A more difficult question is presented by the claim of con-
tributory negligence. It is not pretended that there was any
duty upon the deceased to inspect the hook, or that he had
anything to do with its selection. The sole claim is that
he was negligent in standing where he did. It is well estab-
lished that in this state contributory negligence is an affirma-
tive defense, and that the burden is upon the defendant to
establish it. *Currans v. Seattle & San Francisco R. & Nav.
Co.*, 34 Wash. 512, 76 Pac. 87; *Spurrier v. Front St. Cable
R. Co.*, 3 Wash. 659, 29 Pac. 346; *Randall v. Hoquiam*, 30
Wash. 435, 70 Pac. 1111; *McLeod v. Chicago, Milwaukee
& P. S. R. Co.*, 65 Wash. 62, 117 Pac. 749. While this de-
fense may be established by the plaintiff's evidence, it is also
well settled that, where there is uncertainty as to its exist-
ence, "whether the uncertainty arises from a conflict in the
testimony or because the facts being undisputed, fair minded
men will honestly draw different conclusions from them," the
question is not one of law, but one of fact to be determined
by the jury. *Richmond & Danville R. Co. v. Powers*, 149
U. S. 43; *Currans v. Seattle & San Francisco R. & Nav. Co.*,
*supra; Henry v. Seattle Elec. Co.*, 55 Wash. 444, 104 Pac.
776; *Burian v. Seattle Elec. Co.*, 26 Wash. 606, 67 Pac. 214.

The courts are, therefore, not at liberty to speculate as
to the existence of any fact necessary to the establishment
of the defense of contributory negligence. Every essential
fact must be so plain that the minds of reasonable men may

not differ thereon, before the court will be justified in withdrawing the question from the jury. *Christianson v. Pacific Bridge Co.*, 27 Wash. 582, 68 Pac. 191. Moreover, even assuming that the deceased was guilty of negligence, if the defendant's negligence was the proximate cause of the injury, while that of the deceased was only a remote cause or a mere condition of it, the defendant is still liable. *Redford v. Spokane Street R. Co.*, 15 Wash. 419, 46 Pac. 650; *Atherton v. Tacoma R. & Power Co.*, 30 Wash. 395, 71 Pac. 39. What was the proximate cause of the injury was a question for the jury under proper instructions. *Gray v. Washington Water Power Co.*, 27 Wash. 713, 68 Pac. 360.

Conceding that the deceased was guilty of contributory negligence in standing where he did, it is still manifest that, before the jury could have found that negligence the proximate or efficient cause of the injury, it must also have found that the hook would have broken had it been without defect and made of good material. To hold that, as a matter of law, the decedent's negligence was the proximate cause of the injury, as must be held to justify a nonsuit, is to hold without evidence to that effect and on mere suspicion that a sound hook made of good material must have broken in any event. We would also have to hold, as a matter of law, that a sound hook must have broken at the same instant that this did, since if the hook had held for a longer time, the deceased might have changed his position or the log might have been dragged beyond him. Such speculation will not be indulged in order to grant a nonsuit. The question of contributory negligence in all of its phases was one for the jury.

The judgment is reversed, and the cause is remanded for a new trial.

MORRIS, MOUNT, FULLERTON, and MAIN, JJ., concur.