[No. 14774. Department Two. January 10, 1919.]

THOMAS J. HINES, *Appellant*, v. CHICAGO, MILWAUKEE
& ST. PAUL RAILWAY COMPANY, *Respondent*.[1]

RAILROADS (66)—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLI-
GENCE—DUTY TO LOOK AND LISTEN. Plaintiff was not guilty of con-
tributory negligence, as a matter of law, in driving an automobile
upon a country railroad crossing, upon a dark night, when he was
struck by a locomotive running rapidly backwards without the usual
headlight or any warning signals, where he looked before driving
on the crossing for an approaching train, and saw none; the negli-
gence of the company being largely responsible for his conduct.

Appeal from a judgment of the superior court for
King county, Frater, J., entered October 19, 1917, in
favor of the defendant, notwithstanding the verdict of

[1]Reported in 177 Pac. 795.

a jury rendered in favor of the plaintiff, in an action for personal injuries sustained at a railroad crossing. Reversed.

*S. A. Keenan,* for appellant.

*Geo. W. Korte* and *Farrell, Kane & Stratton,* for respondent.

PARKER, J.—The plaintiff, Hines, commenced this action, seeking recovery of damages from the defendant railway company for personal injuries claimed to have been caused by the negligent operation of one of its locomotives at a country road crossing on its main line track some two miles east of the town of Renton, in King county. Trial in the superior court for that county sitting with a jury resulted in a verdict awarding to the plaintiff damages in the sum of $3,000. Thereafter, before the entry of judgment upon the verdict, counsel for the defendant made a motion for judgment in its favor notwithstanding the verdict, which motion was by the court granted and judgment entered accordingly. The motion was rested upon the ground that the plaintiff's injuries were conclusively shown by the evidence to have been caused by his own contributory negligence; and it is apparent that the trial court so concluded and decided, as a matter of law, in rendering judgment notwithstanding the verdict. From this disposition of the cause, the plaintiff has appealed to this court, asking reversal of the judgment and that the trial court be directed to enter a judgment in his favor upon the verdict.

There is almost no dispute as to the facts which it is necessary for us to notice, other than as to the number and kinds of lights upon the locomotive and as to the ringing of its bell and blowing of its whistle as it approached the crossing. We shall assume that,

at the crossing, respondent's track runs east and west. This is approximately true. The country road, which crosses the track at this point, runs parallel with and adjoins the north line of the track right of way for a distance of a mile or more to the west of the crossing, while it runs parallel with and adjoins the south line of the track right of way for a distance of a mile or more east of the crossing. The track is upon a fill some six or eight feet above the road at the points where it turns at the edge of the right of way on each side thereof to the crossing. The right of way is a hundred feet wide, and the road crosses it at grade at an angle of about twenty degrees from a right angle, so that, from the turn of the road on each side of the right of way towards the track, it is about sixty-five feet from the track. From these points it ascends to the track at about a twelve per cent grade. The roadway is comparatively narrow at the crossing, and one driving a vehicle up the grade from either side cannot see another vehicle approaching from the other side until nearly upon the track, so that it is necessary for a driver so approaching the crossing to exercise care in watching for the possible approach of a vehicle coming upon the track from the opposite direction. Appellant lives to the east of this crossing. This road is the main traveled highway from Renton to his home.

On January 10, 1916, appellant was driving his Ford automobile from Renton east to his home. He was sitting alone in the front seat, while his mother and a lady friend were sitting in the back seat. When he arrived at the point where the road turns toward the crossing on the north side of the right of way, he stopped his automobile to let their lady friend out and go to her home, which was but a short distance from there to the north of the road. Appellant then got

out, walked to the rear of the automobile to examine a rear tire, and then buttoned up the rear side curtain. While they were there a neighbor came along, going east in an automobile, and passed them, going over the crossing ahead of them. This neighbor, seeing appellant's automobile stopped there, supposed at first that it was because of an approaching train; so he looked with particular care to see if any train was approaching, but did not see any. Appellant had gotten into his automobile and started up the grade towards the crossing, sixty-five feet away, just as the neighbor's automobile passed over the track at the crossing. While ascending the grade at a slow speed —his automobile being in low gear—he again looked along the track for the approach of any train. There were no front side curtains to the automobile to obstruct his view in either direction. He says he looked the last time when he was about seven feet from the track, but saw no approaching train. Just as the automobile was passing over the track, there came from the east, close upon it, the rear end of a large "helper" locomotive, running backward at a speed of at least twenty miles per hour. The automobile was struck before it had cleared the crossing, and thrown forward and off the track to the south side, resulting in appellant's injuries, for which he seeks recovery. While his automobile was stopped to let the lady friend out, inspect the rear tire, and button the rear side curtain, its motor was left running, making the usual noise of such motors. From that point all the way up to the crossing, one sitting in an automobile as appellant was had a clear view for a distance of at least half a mile along the track both east and west, except for the darkness of the night. It was, however, about seven o'clock in the evening, and, being in Janu-

ary, was, of course, long after the passing of daylight. It was also a dark night. During the whole of the time appellant approached the crossing, from where he had stopped his automobile, he had a dark forest to the south of the track and towards the east for a background to his view of the track; rendering it highly probable that he could not distinguish a dark object upon the track, such as a locomotive, during any of this period, unless it be quite close to him. This condition seems to have been about the same, so far as his view is concerned, even when he was very near to the track looking to the east. The ground was covered with snow about eight inches deep. This, it seems, would have no material influence upon the effect of the forest background, in so far as his ability to see a dark object upon the track is concerned, though it probably had the effect of materially deadening the sound of the approaching locomotive, especially when we take into account the fact that it was running on a slight down-grade.

As to what lights were upon the locomotive, the evidence is in conflict. It may be conceded that there was a red lantern hanging near the center of the rear end of the tender, and if we were triers of the facts we would be inclined to conclude that the preponderance of evidence showed that an ordinary white hand lantern was hanging on the lower south corner of the rear of the tender; but the evidence is in some conflict even as to this. While the evidence is in conflict as to whether or not the headlight on the front end of the locomotive was burning, there is abundant evidence warranting the jury in believing it was not then burning, but came on after the locomotive had struck the automobile and passed over the crossing, after which it was turned on when the train crew came back

to see the result of the collision. It is plain that there was no headlight on the rear of the tender, such as is sometimes found on locomotives designed to run backwards as much as forwards. Appellant says he saw no lights at any time when he looked east along the track as he was coming up the grade approaching the crossing. Viewed in one aspect, this may seem somewhat difficult to believe, in view of the almost certain fact that the red lantern at least was on the rear of the tender and could have been seen for a long distance towards the east; but that there was no other light then on the locomotive capable of being seen by appellant as he approached the track, the jury may have well believed from the evidence; and as to the red light, or even the white light, upon the rear of the tender, the jury may well have believed from the evidence that, while either was capable of being seen by appellant, neither was consciously noticed by him because of his looking for something that would indicate the approach of an engine or train from that direction, and that neither would have suggested to his mind, or to the mind of a reasonably cautious person in appellant's position, that such lights were upon a locomotive running backward at such a speed out in the country towards this crossing. As to any signal by way of sound which might have been given from the locomotive, either bell or whistle, the evidence is also in conflict; but it was clearly such as to warrant the jury in believing that no sound signal of any kind was given from the engine of its approach to the crossing until almost the instant the automobile was struck.

We do not understand counsel for respondent railway company to seriously contend that there was not sufficient evidence to carry the case to the jury as to the question of its negligence, if the question of appel-

lant's contributory negligence were not in the case. Indeed, we see no room for any such contention, in view of the fact that the locomotive was running backwards at such a rate of speed over this country crossing with no headlight on the rear of the tender indicating that it was running in that direction, and no other lights upon it other than possibly the red and white lanterns which were on the rear of the tender and which would not suggest to an observer of reasonable caution, even if he saw either of them, that the engine was running in that direction at such a place as on a main line track out in the country over a road crossing. Counsel for respondent seek to have us shut our eyes to the question of its negligence, and proceed upon the theory that such negligence is not a subject for proper inquiry at this time, since they are relying upon the contributory negligence of appellant to defeat his recovery. This view of the case, we cannot assent to. This is one of those cases where the question of appellant's contributory negligence is intimately related to the question of respondent's negligence, since it was the negligent acts of respondent which largely induced appellant to act as he did. When respondent's servants failed to give such signals by sound or lights as would attract the attention of one about to pass over this country crossing, indicating that the locomotive was running in that direction, it clearly was guilty of negligence; and such negligence becomes little short of a controlling factor in determining whether or not appellant was guilty of contributory negligence in acting as he did. As was well said by Judge Fullerton in *Hull v. Seattle, Renton & Southern R. Co.*, 60 Wash. 162, 110 Pac. 804:

"A victim of an accident is entitled to have his conduct judged by the circumstances surrounding him at the time of the accident—by the conditions as they

appeared to one in his then situation—and if his conduct when so judged appears to be that of a reasonably prudent person, he cannot be said to be guilty of negligence.''

This is not only the rule applicable generally to contributory negligence, but it has peculiar force and application to conditions which are the creations of a defendant's relying upon the contributory negligence of the injured person to escape responsibility, when such conditions would naturally influence the action of the person charged with contributory negligence. This is the principle upon which our decision in *Richmond v. Tacoma R. & Power Co.*, 67 Wash. 444, 122 Pac. 351, was largely rested, which dealt with a situation, we think, even less favorable to the injured person than that with which we are here dealing. We are also to remember that this is not a case where we are asked to decide negatively that there is not sufficient evidence of negligence on the part of respondent to warrant recovery; but we are asked to decide affirmatively that it has been conclusively proven that appellant was guilty of contributory negligence—a question as to which the burden of proof rested upon respondent. As pointed out in the *Richmond* case, greater caution is to be exercised in deciding, as a matter of law, that a fact which the law requires to be affirmatively proven has been conclusively proven, than in merely deciding, as a matter of law, negatively, that a fact has not been proven. It seems to us that there is greater danger of invading the province of the jury in the former than in the latter case. That contributory negligence is an affirmative defense, casting the burden of proof upon the defendant to establish it, is the well settled law of this state. *Benson v. English Lumber Co.*, 71 Wash. 616, 622, 129 Pac. 403.

Counsel for respondent cite and rely upon our decisions in the following steam and suburban electric railway cases: *Woolf v. Washington R. & Nav. Co.*, 37 Wash. 491, 79 Pac. 997; *Cable v. Spokane & Inland Empire R. Co.*, 50 Wash. 619, 97 Pac. 744, 23 L. R. A. (N. S.) 1224; *Aldredge v. Oregon-Washington R. & Nav. Co.*, 79 Wash. 349, 140 Pac. 550; *Allison v. Chicago, Milwaukee & St. Paul R. Co.*, 83 Wash. 591, 145 Pac. 608. The *Woolf* case involved an accident at a country crossing occurring in the daytime, when the plaintiff could, or must, have seen the approaching train from a point a considerable distance before going upon the crossing, the train being pulled by the engine and running forward in the usual way a train would be expected to be running out in the country. The *Cable* case differs from the *Woolf* case in no material respect, except that it was an electric train running in the same manner, which could have been, or was, seen by the plaintiff as he approached the track in ample time to have enabled him to have stopped and let it pass. The *Aldredge* case involved the injury of the plaintiff at a country crossing, just prior to which he did not look or listen for a train in any manner, though he had ample opportunity for seeing the train approach before going upon the crossing, and the train was running forward in the usual manner, as it would be expected to run at such a place. The *Allison* case involved injuries caused by the driver of an automobile running his automobile against a slowly-moving freight car which was being switched across Pacific avenue, in Tacoma, at a place where the injured plaintiff must have known that cars were often switched. That was a case of the automobile running into the car, rather than the car running into the automobile, the car being struck a considerable

distance back of its forward end as it was moving at the rate of only four miles an hour across the avenue at a point where the exercise of any sort of care would have enabled the plaintiff to see the car in time to stop his automobile and avoid the accident.

Counsel for respondent also cite and rely upon the following street car cases: *Christensen v. Union Trunk Line*, 6 Wash. 75, 32 Pac. 1018; *Skinner v. Tacoma R. & Power Co.*, 46 Wash. 122, 89 Pac. 488; *Helliesen v. Seattle Elec. Co.*, 56 Wash. 278, 105 Pac. 458; *Fluhart v. Seattle Elec. Co.*, 65 Wash. 291, 118 Pac. 51; *Slipper v. Seattle Elec. Co.*, 71 Wash. 279, 128 Pac. 233; *Stueding v. Seattle Elec. Co.*, 71 Wash. 476, 128 Pac. 1058; *Heidelbach v. Campbell*, 95 Wash. 661, 164 Pac. 247; *Herrett v. Puget Sound Traction, Light & Power Co.*, 103 Wash. 101, 173 Pac. 1024. In each of those cases dealing with injuries which occurred in the nighttime, the plaintiff carelessly put himself in the way of an on-coming street car, well-lighted within and with the usual headlight burning in such manner as to evidence to any one in the position of the plaintiff that the car was coming in his direction; and in each of those cases dealing with injuries which occurred in the daytime, the plaintiff carelessly put himself in front of an on-coming car which he either saw, or must have seen, by the exercise of the slightest care, was coming in his direction. Had there been a headlight upon the rear of the tender, or had the engine been running forward toward appellant with its headlight burning, there would be some room for arguing that he should be held guilty of contributory negligence, as a matter of law, under the decisions relied upon by counsel for respondent.

It is argued in behalf of respondent that, notwithstanding the want of a headlight upon the rear of the

tender and the possible want of sound signals by whistle or bell from the locomotive, appellant could nevertheless have stopped his automobile after seeing, or after he must have seen, the approaching locomotive in time to avoid the accident. This is a plausible argument which might well be addressed to the jury; but when we consider how close appellant must have been to the track when he first became conscious of the locomotive backing down upon him at such a considerable speed, and the absence of sound signals or warning lights suggesting to him that it was moving in his direction, we feel quite convinced it cannot be said, as a matter of law, that he did not do all that a reasonable person would have done in the situation he, for the instant only, found himself. The main general fact which stands out in this case, in the way of holding, as a matter of law, that appellant was guilty of contributory negligence, is that the jury could well believe that there were no lights upon, or sound signals given from, the locomotive indicating to appellant that it was running in his direction, or even to render him conscious of its presence, until almost the instant of the collision.

We have referred to the Chicago, Milwaukee & St. Paul Railway Company as though it were the only defendant and respondent in the case. This we have done merely for convenience of expression. The Pacific Coast Railroad Company also became a defendant and respondent in the case. The two companies, however, have joined in one brief, and each relies alone upon the contributory negligence of appellant as grounds for the sustaining of the judgment notwithstanding the verdict. We therefore find it unnecessary to notice whether or not there is any difference as to the liabilities of these two defendants and respondents.

The judgment notwithstanding the verdict is reversed, and the cause remanded to the trial court with directions to enter a judgment upon the verdict in favor of the appellant, Hines.

MAIN, C. J., FULLERTON, MOUNT, and HOLCOMB, JJ., concur.